We'll hear argument next in Case 11-1327, Evans v. Michigan. Mr. Moran. Mr. Chief Justice, and may it please the Court, a long and unbroken line of this Court's precedents stand for the principle that a judge's final determination that a defendant is not guilty is a final determination of an acquittal for double jeopardy purposes, even if that determination is wrong as a matter of law or as a matter of fact, and even if— Sotomayor, do we give credence to how the judge labels what the acquittal is? No. No. This Court must determine, whatever its label, what has the judge done. Has the judge made a determination that the government has failed to prove its case, as in Martin Lennon, or has the judge made a determination of something else, as in Scott, for example, pretrial delay? Now, the Michigan Supreme Court— Once the judge determines, quite erroneously, that it has to be a dwelling, midway during the trial, I'm the judge, I can say this has to be a dwelling. Is there any way I can make that point, make that ruling, without invoking double jeopardy? Well, you could reserve that ruling to the end of the case. You could make a ruling as to the jury instructions without — or what the jury instructions are going to be without applying them to the facts of the case, in other words, without making a determination of the defendant's guilt or innocence. But if I persist in that view, there's nothing the government can do? The government can try, we learned from Smith, try to get you to reconsider that view before the defendant puts on his case. But once the defendant — once the judge has made a final determination that the defendant is not guilty, even on an erroneous view of the law, this Court has held multiple times that that is a final determination, that is an acquittal for double jeopardy purposes. Because, I suppose, the judge is the government, too. Exactly. Once the government— So whether the unfairness inheres in the prosecution or in the judge, the guy's been treated unfairly. If a State chooses, Justice Scalia, to vest acquittal power in its judges, it must accept the double jeopardy consequences of that. Even when the defendant interjected this issue, I mean, the defendant urged the judge to make this incorrect notion that you have to negate the higher crime in order to convict of the lesser crime. It was the defendant that led the trial judge into error. The trial judge didn't come up with this on his own. The judge came up with this, Your Honor, on defendant's motion. That's correct. But it was actually supported by the jury instructions that were in use, and actually it was supported by the structure of the statutes in question. The statute in question under which Mr. Evans was charged explicitly said that the building other than one specified in the preceding subsection. But you're not arguing that that was the correct charge. No, we're excluded now from arguing that that's correct. Anyway, counsel often encourages judges to do the wrong thing. In fact, in every case, there's one of the two counsels urging the court to do the wrong thing, right? Yes, Justice Scalia, and that's what the adversary system consists of. Yes, and in Santa Maria, this Court noted that point exactly, that all acquittals, whether they're by the judge or by the jury, or I should say almost all acquittals, some are sua sponte, almost all acquittals, whether by judge or by jury, are upon invitation of defense counsel. But if a judge makes a critical ruling mid-trial, that at the request of the opposing counsel, jury proceedings are suspended for 48 hours, and the aggrieved party can run  I don't think the State could do that, Justice Kennedy, because of Smalas. Because of? Of Smalas. So that was essentially the situation in Smalas. You had a bench trial. The judge grants a demur. He says the evidence is insufficient. And then the prosecution attempted to run to the Pennsylvania appellate court, and this Court said it couldn't do that because that was a final determination. Well, in my hypothetical, the State says, and this isn't a final determination. The ruling doesn't become final until you have 48 hours to go to the court of appeals. Well, I think a State could make – investing acquittal power in judges could put limitations on that acquittal power. How would they do that? I'd like to go back to Justice Kennedy's question. It's easy when you have a jury, because what happens is a judge can decide whether at the end of the prosecution's case he's going to dismiss for insufficiency or he can give it to the jury, and if the jury renders a verdict, set it aside. Jeopardy attaches only if the judge dismisses the case after the prosecution's judgment, but not if he sets aside the verdict, correct? Well, jeopardy attaches both ways, but a reversal is possible in the latter. And the latter. So what can a State do, some have done something, to ensure that even if jeopardy has attached, that there can be a valid reversal if the judge is wrong on a legal theory? So give us an example of what, in a judge trial, a State could do to ensure that a legally wrong judgment is still reversible. In a bench trial, Your Honor? In a bench trial. What could it do? I think if a ‑‑ if in a bench trial, if the judge has the power to acquit or convict and the judge acquits, I believe the Double Jeopardy Clause would preclude the State from coming up with a clever mechanism allowing ‑‑ for allowing appellate review. The Court, of course, I mean, the State could, of course ‑‑ I thought there were in your brief some examples, in someone's brief, there were some examples. In a jury trial with a judge ‑‑ No, forget about a jury trial. Let's go to the bench trial. I don't know what ‑‑ You're not helping your argument by saying there's nothing a State could ever do. Well, they could withdraw the power of judges to grant acquittals or convictions in the first place. In other words, they could abolish bench trials, which, as the Court noted ‑‑ You know something, counsel, you're sinking your hole deeper. What? Not helping yourself in this argument, because how does that help the system? Well, with all respect, Your Honor, the Double Jeopardy Clause here transcends the State's ‑‑ I don't disagree. You mean no State could ever say to a judge, give a ‑‑ render a verdict on the prosecution's theory and then set it aside? If you think the theory is not legally ‑‑ After Smith, it's clear that immediate reconsideration is a possibility. And if a State set up a system as in Leiden v. Municipal Court, where you have essentially a magistrate making a preliminary determination, and then it goes to a higher judge who goes trial de novo, that, of course, is permissible. But if the judge is the final arbiter, in other words, if the judge sits in the place of the jury, this Court has said over and over again that a judge verdict is equivalent to a jury verdict for purposes of double jeopardy. So, yes, courts ‑‑ the States could set up systems in which judges have less power than a jury does. I'm not aware of any State that's done that. I am aware of what Nevada has done, which has said that judges can't grant midtrial directed verdicts. And that's a way in a jury trial ‑‑ You keep saying midtrial. Yes. What is not midtrial? Some States require a judge to wait. Yes. Yes, Nevada. What happens in those States? Well, in that case, then, there is no problem, because if the judge makes a determination after the jury verdict, then the ‑‑ then that can be appealed under Wilk. I keep talking not about jury verdicts, but about bench trials. I want to focus on the bench trial process. If it ‑‑ but if the judge at the end of a trial renders a solemn, formal, final verdict, I find the defendant not guilty, in a bench trial, I don't see a mechanism for ‑‑ for the State to appeal that determination consistent with the double in Leiden, as Massachusetts did in Leiden. But short of that, a judge's determination is entitled to the same respect. It's true. In the middle of the trial, a judge grants a mistrial and says ‑‑ I'm sorry, grants an acquittal and says, I think that prompt prosecution is an element of the offense, and there wasn't prompt prosecution here. Now, could there be a reprosecution in that situation? Yes, Your Honor. Even though the judge says he thinks that that's an element of the offense. Because no part of my argument depends upon the judge's labeling. What the judge has done in that case is a midtrial dismissal that he called an acquittal, but it was actually a dismissal for another purpose. That's exactly what Scott was talking about, and that is like Scott, where the judge may have characterized what he had done as acquitting the defendant, but he didn't. Well, he saw a phantom element, and that's what happened here, too, isn't it? Well, pretrial delay is not an element of the offense. Pretrial delay is another part of criminal procedure. And this is ‑‑ and the fact that this was not a dwelling wasn't an element of the offense, either. But it is clearly related to the offense. And Scott clarified what Martin Linnan meant. Martin Linnan was an attempt to distinguish between cases in which the judge makes a ruling relating to guilt or innocence and a ruling designed to serve some other purpose. The problem with the line the Michigan Supreme Court drew here is that it is completely impossible to administer. And if I can give a couple of examples, the Lynch case from the Second Circuit was an effort by one circuit to attempt to follow the Maker line, and you get questions that are completely unanswerable in that case. Is bad intent simply a gloss on the willfulness element, in which case all you've done is misconstrue an existing element, or is it, as the dissent claimed in Lynch, a new element? And these are questions like how many angels can dance on the head of the pen. They're simply semantics. It's all labeling. There is no ‑‑ there is no substance there. Alito, that's a problem, but you're ‑‑ to come back to my earlier question, what is your answer? Your answer is that if the judge grants an acquittal based on the failure to prove anything that the judge thinks the prosecution has to prove, that's an acquittal. Is that fair? Yes. And I fall back to this Court's footnote in Scott that courts are perfectly capable of distinguishing between rulings relating to guilt and innocence and rulings designed to serve other purposes. So if you have a devious judge who is determined to package a prosecutorial misconduct ruling as an acquittal, I have no doubt that an appellate court would be able to smoke that out. Well, to come back to the argument we just heard, so suppose the judge grants a mistrial for failure to prove an action within the statute of limitations, even though no statute of limitations defense was raised, would that be ‑‑ would that be an acquittal? Only ‑‑ I think my answer to that would depend on how you rule in the prior case, depending on whether a statute of limitations is something the prosecution has to prove in order to establish guilt. All right. Assuming for the sake of argument that it's not an element. It's not really an element, that the judge thinks it's an element. Well, if it's something that could result in an acquittal, if it is ‑‑ if the defendant raising the statute of limitations is something that could result in an acquittal, because I come to Burks, where Burks says an affirmative insanity defense, the prosecution fails to disprove that, that is an acquittal when the appellate court concluded that there was failure to disprove the affirmative insanity defense. That shows that that language in Martin Lennon can't be taken as if it was construing the terms of an easement. You have to look at what was Martin Lennon getting at. And Martin Lennon is trying to identify those rulings relating to guilt or innocence, which include affirmative defenses or ‑‑ I'm not sure I understand the rationale for your answer to your own hypothetical. The judge characterizes a prosecutor or a misconduct incident as a grounds for acquittal. It really isn't. And you said the court of appeals could straighten that out? Yes. That's Scott. On what rationale? And so what's the general principle that allows the court of appeals to do this sometimes and not others? If the judge has made a ruling going to the defendant's guilt or innocence and finding that, as in Martin, examining the government's evidence and finding that they have failed to prove the defendant's guilt, final, there can be no appeal. But if the judge has made a ruling that is designed to serve some other purpose, so if the judge in my hypothetical were to say ‑‑ Oh, I thought it was the judge just subjectively does this, but he doesn't say anything. He just characterizes it as an acquittal. That's a case actually quite a bit like some of the cases, and it demonstrates the problem of the Michigan Supreme Court's line. So, example, in Martin Lennon, all the judge said is this is one of the weakest cases I've ever seen. Presumably, if the Respondent were to win, they would be entitled to appeal a determination like that to at least try to convince the appellate court that the reason the case seemed so weak to the trial judge was that the trial judge had added an extra element. Same thing in Smalis, where the judge simply said he granted a demurrer by looking at the prosecution's case and saying, I find the evidence insufficient. And, in fact, in Smalis, the Pennsylvania tried to argue that the judge had actually heightened the burden for mens rea for third-degree murder. And so, again, they would be entitled to make these arguments, and so then we would get into questions of in granting acquittals, would judges have to explain all of the elements ‑‑ Breyer. I see the problem, but I'm still back where Justice Kennedy was. And it was my own failing here. I didn't quite understand it. I thought when you grant a dismiss ‑‑ when you dismiss the case in the middle of the trial because the prosecution was brought too late, all you're doing is in the middle of the trial granting something you should have granted in the first place before you impaneled the jury. I thought that in Fang Fu, Judge Wysanski had dismissed the case after impanelment because he wrongly thought that the U.S. attorney had been talking to a witness or a juror or something at lunchtime, and that he hadn't been. I mean, that's his acquittal. And I thought Justice Harlan for the Court wrote double jeopardy, jeopardy attached, you can't try him again. And I didn't think the Court ever overruled that. So that ‑‑ what, in where? Fang Fu has not been explicitly overruled, but I think it's been limited by Scott. Breyer, so Scott says that even in Judge Wysanski ‑‑ Scott says Fang Fu was wrong, because the reason that Charlie Wysanski dismissed it is he had this idea of a ‑‑ yay, USA, doing something improper at lunch. And that's ‑‑ now, on your theory, on the theory you just enunciated, double jeopardy wouldn't protect against a second indictment, right? Well, Justice Breyer, Fang Fu actually listed two reasons why the trial judge granted a directed verdict. One was prosecutorial misconduct. The judge apparently thought that the prosecutor had been speaking with the witness. But the second one was the total lack of credibility of the prosecution's witnesses. And when the case came to this Court, the concurring justice said, the second one is good for double jeopardy purposes, but I would make it clear that the prosecutorial misconduct rationale is not. That part, I think that concurring opinion has been effectively adopted in Scott, so that a finding of prosecutorial misconduct, I'm dumping this case midtrial, yes, the prosecution gets another bite at the apple, assuming that it's done on the defendant's motion. One of the reasons we've said that underlies the double jeopardy clause is to prevent overbearing conduct by the government. That's not an issue here, is it? We said the government gets one fair shot at conviction, and if there's been a legal error below, they haven't had a fair shot. Mr. Chief Justice, I would respectfully disagree. Mr. Evans was hauled into court by the State. He was acquitted, in our view, by the judge, who was a representative of the State, who was relying on the standard jury judgment. Well, this business about the judge being representative of the State, I'm not sure how far that gets you. The government is one of the adversaries appearing before the judge, and the judge is not supposed to take the government's side, so he's not really a part of the government. And it does seem to me that if they've been thrown out of court because of a legal error, that's not a fair shot. Well, I understand that view, Mr. Chief Justice, but it's contrary to a lot of this Court's cases. I think this Court would have to review a lot of this case's, most recently, Smith and Smalis and Martin Lennon, all of which said that a legal error affects the quality of a judgment, and Scott also specifically said this, a legal error affects the quality of a judgment but not its finality for double jeopardy purposes. No, no, I'm just saying that that particular rationale for the double jeopardy clause is not applicable in this case. Well, I think it is, because a citizen has been brought into court, expects to go through one trial, and they are told, sir, I am finding you not guilty, and then to find out later, for the State to come back later. That's looking at it from the defendant's perspective. We have said that the government should have one fair shot at conviction. And it seems to me that if they lose because of an error, that's not a fair shot. Your Honor, I come back to the language in Martin Lennon which talks about what the purpose of the double jeopardy clause is, is to protect defendants against continuing government oppression. And that oppression arises from the anxiety of having to go through it again and again. But isn't it hard to argue with the notion that your client has gotten a windfall here? I mean, this is not continuing government oppression, and, you know, that's ‑‑ that suggests a real harm on the part of your client. I mean, here, because of a legal error, your client walks away the winner when he shouldn't have. Well, Your Honor, without the error, the trial would have continued. But I think that argument respectfully proves too much, because there are lots of these cases in which legal error was made. And so in Rumsey, you could say exactly the same thing about Mr. Rumsey. Yes, I think that's right. This is an argument against this whole line of cases, that this whole line of cases essentially has set up a system where the real purposes of the double jeopardy clause do not apply, and where defendants walk away with windfalls. And I guess what's your best argument against that proposition? Well, once you accept the equivalency of a judicial acquittal to a jury acquittal, you have to accept that both actors are capable of error. Both actors are human. Juries are capable of making legal errors as well as factual errors. They're capable of misunderstanding the instructions. In fact, they're capable of being misinstructed. Had the judge not granted the directed verdict here, she presumably would have instructed the jury the same way, and the jury would have also acquitted Mr. Evans. For the same reason. And so to try and tease out legal and factual errors, especially when in often there are mixed questions of fact and law that are at stake here, I think is a losing proposition. I think it — I think the Court has decided to draw a firm line, recognizing that an acquittal is special. An acquittal is the most fundamental thing that can happen. Ginsburg. Could a system say if you have a double jeopardy looming in the case, then arguments like the one that the defendant made and the judge brought have to be made pretrial, and if they're not made pretrial, they're waived. I mean, here, the case was ongoing when the defendant made this suggestion. I suppose the system had built into it a requirement that defendants that are going to make this kind of plea do it pretrial. Justice Ginsburg, I don't think it would have been right for Mr. Evans to make this claim, which proves that it became clear that what the prosecution was proving was that the building burned was, in fact, a dwelling house, and therefore seemed to be excluded by the statutory language and especially the commentary to the jury instructions from the definition of the offense. Michigan is an information State. Michigan does not require an indictment that lists every little bit of the crime and all of the details. All Michigan requires is a very simple statement of the crime and the statutory citation and, of course, who the defendant is and the date and venue of the alleged crime. And so here, Mr. Evans would have had no way of knowing in advance what the prosecution was going to prove. That's why this case is unlike Lee. Lee is an effective indictment. Nobody claimed that Mr. Lee was innocent and that the prosecution couldn't prove the elements of the crime against Mr. Lee. The problem was that the indictment failed to allege a specific fact. And that's the problem. Sotomayor, I'm a little confused. It was charged with the crime of burning down a dwelling, correct? Mr. Evans, no. He was charged with burning other real property. Of? Burning other real property. And no specific statute was cited? Yes. Which one? The that statute. The dwelling statute, not the exception to the dwelling. It's the exception to the dwelling statute. It's 750.73, which is on page 2 of the topside brief. That's what he was charged with? Yes. So why did the Court dismiss if he was charged with burning down a house? I thought he was charged with burning down a dwelling, and the argument was he should have been charged with burning down a house. No. He was charged with the crime on 750.73, which reads in relevant part that a person who willfully or maliciously burns any building or other real property or the contents thereof other than those specified in the next preceding subsection of this chapter. And the next preceding section of the chapter is about burning down dwelling houses. My only quibble is you had no doubt, the defense attorney had no doubt that he burned down a house, that someone burned down a house, correct? It was allegedly a vacant house, and apparently that's why the prosecution charged it this way. Got it. So they charged it. They're the ones who made the choice of which statute to apply. They apparently thought that they couldn't prove that it was a dwelling house, so they proved the other crimes. And the thinking of the defense attorney and the thinking of the judge was that these two crimes were complementary to each other, in other words, that they did not overlap. It was either a dwelling house or not a dwelling house, and then one statute or the other applies. As a result of the ruling of the Michigan Court of Appeals in this case, which is now not contested, in fact, the burning the statute under which Mr. Evans was charged totally encompasses the greater crime, because any building is covered in the crime with which Mr. Evans is charged, while only specific buildings, dwelling houses, are charged in the statute. Sotomayor, it's a sentencing enhancement is really what the argument is. The decision was. That every you can be charged with burning down a dwelling and you can only get the enhancement if they prove it's a house. You can only get the greater offense. Exactly. Yes. But a jury would have to make that determination, or the judge in a bench trial would have to make that determination beyond a reasonable doubt. If there are no further questions, I'll reserve the balance of my time. Thank you, counsel. Mr. Boffman. Mr. Chief Justice, and may it please the Court. This trial here was ended before a verdict from a jury on the motion of the defendant proposed vigorously by the prosecution, alleging essentially that the crime charge contained an uncharged element on which insufficient proof had been presented for a rational factfinder to find guilt beyond a reasonable doubt, that uncharged element being that the offense be for want of a better term or the structure be for want of a better term a non-dwelling. That had not been alleged. But it's been conceded throughout the appellate history of this case from the Michigan Court of Appeals on that there is no such element in the crime. The statute that Mr. Moran mentioned that refers to the next proceeding section over three decades ago was held to be words of limitation. In other words, you don't have to prove it's a dwelling to prove that other real property or a building or other real property has been burned. So in the 1970s it was held the difference between the two statutes is the greater requires proof of a dwelling or a habitation, the lesser does not. The judge held that you have to prove the negative of the element that enhances the offense in order to prove the lesser offense. You have to prove it's a non-dwelling. And, again, that's been conceded to be error throughout the entire appellate history here. And so the proofs were adequate, were appropriate here, and the charging document was appropriate here.  The second clause is aimed at prohibiting certain governmental abuses that occurred historically. One of them is when the government would terminate a trial that was not going well without the consent of the defendant in order to take another shot at it, to build a better case or perhaps get a better fact finder. And the Double Jeopardy Clause prohibits that kind of conduct in order to take another shot at it. By establishing through this Court's cases that mistrials without the consent of the defendant bar retrial, that abhorrent practice is barred, unless a manifest necessity is shown. And we've even extended that to the circumstance if the judge is intending to help the defendant. He is doing something that he believes is in the defendant's favor. If the defendant has not consented, then that valued right to a verdict from the tribunal that he has before trumps everything. But if there is consent, as there was in this case, the defendant asked the judge to terminate the trial without going to this jury, so he gave up his valued right to a decision by this tribunal. If he does that, then that, the other side of that coin is, that is ordinarily outcome determinative the other way. A retrial is permissible unless the government has achieved the first harm by the back door, that is, by goading the defendant into the mistrial. Scalia. So if the judge did this on her own, that would have been okay, and there would be double jeopardy attaching? That's correct. So we have to decide in each case whether the defendant was the initiating source of the error. In terms of the whether or not a judgment of acquittal was granted, yes, both the Federal rule and the Michigan rule provide that on the defendant's motion or on the defendant's motion. What if the defendant just agrees with the judge? The judge says, you know, I think this indictment is bad because you have to show that it wasn't a dwelling place. And the counsel for the defendant, yes, that seems like a good idea. Is that enough to? I think that would be enough. I think agreement with the judge's course of action would be the judge would be, as in the mistrial situation, would be the defendant's. Well, my goodness, disagreement would be malpractice, wouldn't it? Well, it depends on whether you really wish to get a verdict from this jury or whether you risk having a wish to risk wanting to have a retrial before a different fact-finding. You may be very happy with the verdict. A bird in the hand, counsel. I, I, I, well, sometimes that bird in the hand can come back and bite you when you have a second trial. What would happen if the defendant asked for improper instructions, really saying exactly something like this? You know, that the jury has to find this additional element that, in fact, it doesn't have to find. But your theory, I would think, would say that that, too, the government could try the defendant again. After all, the government didn't get its one fair shot. That's correct. And that's, that's the logic of Justice Holmes' position in Kepner. And we don't go that far, essentially, because this isn't a jury case. There is a logic to that position, but it is, there shouldn't be. You don't go that far, in other words, just because it doesn't happen to be this case, but you concede that the logic of your position would extend to improperly instructed juries. It, it would to a certain extent, but it is, it is cut off by two facts. One is simply, as, as Justice Holmes often said, the, the life, the, an ounce of logic of, excuse me, an ounce of logic is often trumped by a pound of history. We have historically said that a verdict by the fact finder, by the jury, terminates jeopardy and there's no inquiry into. Well, we've historically said it in this context, too. I mean, the cases that you are asking us to overrule go back 50 years. Well, when I say historically, I mean back to the time of the founding in terms of when the double jeopardy clause was promulgated and adopted into the Constitution. Fifty years is, is not back to when we were determining what it is we were protecting against when we adopted the clause. And as I think most of the commentators have noted, there's very little explanation in Fong-Fu as to how the court came out where it came out, and there's been very little explanation since as to how we got from the common law prohibition of a retrial after acquittal on the merits by a jury to a ruling of law by the judge that no jury could find guilt beyond a reason without being the same thing, which is where we are today. They do not make retrials. Scalia Well, we didn't have at the time of the founding any mechanism for a judge to do that. I mean, this is a new procedure, and how it fit into the prohibition of double jeopardy was certainly an open question. It's not as though this procedure existed at the time of the founding or in English law before then, and was never adequate to constitute double jeopardy. It's a new procedure introduced, so the question for the Court was, well, you know, if it's the judge rather than the jury that pronounces the acquittal, does that constitute double jeopardy? Verrilli, I think you're exactly right. It, of course, is a new procedure. It didn't exist at the time of the founding, so our question then becomes, is this new procedure sufficiently equivalent to that procedure that is historically protected that it's the protections that it is designed to guard against are served when we bar retrial in these circumstances? And I think, as Justice Kagan had indicated, there are many circumstances where what we are doing is giving the defendant a windfall while serving no interest that was protected by the Jeopardy Clause. So if it's to be an analog, then we need to see, does it really closely approximate a retrial after acquittal on the merits by a jury? Kagan But the point I was making was that the same windfall is received by the defendant that gets an acquittal from an improperly instructed jury. Verrilli, that is true, except we can speculate that's true, but we don't know why the jury came back the way it did. The jury may have acquitted for an entirely different reason. We don't know. We don't have special verdicts and we don't have any mechanism for inquiring. So we treat, you have to have a line somewhere, Jeopardy terminates with the jury verdict, which may have been misinstructed, but we don't know why they came out the way they did. Breyer So, now, I take it you agree that sometimes the prosecution, I'm not saying anyone would, but the defendant's acquitted by the jury, so because he doesn't find enough evidence, they don't find enough evidence, and so the prosecutor thinks, I think I'd like to try him again, and then he's acquitted again. I'd like to try him again, he's acquitted again. Now, substitute judge for jury, the same thing could happen. I mean, I don't see why not, and there's no answer to that, is there? And if there's no answer to that, the same bad thing could happen. Well, then you're going to have to start distinguishing among which judge or jury acquittals do or do not invoke the problem of the Double Jeopardy Clause, and where I'm driving is that there is a principle, and the principle was, seems the simplest way to put it, is where, in fact, the acquittal rests upon a judgment that there isn't enough evidence, that's it, that's what we're after. And we're at some procedural thing or not, maybe we aren't. Okay. Now, the virtue of that is it's simple, it's consistent with the cases, it's been clear, and you're advocating let's go into that and change it or at least interpret the cases as consistent with it, and we're saying there wasn't enough evidence is because the judge had in mind a legal point that he was wrong about. Well, then Double Jeopardy Clause doesn't work. But if your judge was right, it does work, except for the matter of substantive evidence. Now, that way, says your opponent, lies a mess. I just went through that long thing because I don't want you to get to sit down without addressing what I see as a central problem, namely, if we don't accept his view, it's going to be a terrible mess. Well, let me say two things. One is, we don't have the circumstance that existed at the common law that the Jeopardy Clause was designed to protect against of the executive simply saying after an acquittal by the fact finder, let's try him again, let's try him again, let's try him again. Something has to happen in between there, and that is that a court has to determine — neutral and detached arbiters have to determine that what happened when the judge granted the direct advert of acquittal, as it's known in Michigan, was not that at all. The judge actually did something different. And if the court doesn't interpose on the prosecution's request, there will be no retrial. So it's not the harassment and abusive practice of simply starting a new prosecution. We're trying to get what happened in the past. Breyer. Now, you're beginning to make distinctions. Yes. And once you make those distinctions, I go back to the question I asked, which was there is a distinction. The distinction is whether it's a procedural ground or — and, Justice Harlan, it's whether there was a, just talk to the U.S. attorney, I didn't like it, or talk to the witness, or a prosecution brought too late. And the other side of it, where the clause attaches, is where it was done on a substantive basis, not enough evidence. I said, I don't want to repeat myself, but I'm saying what he's coming up with is a simple, clear rule, basically consistent with the cases, and why shouldn't we follow it? Well, I think — I think consistent with the cases and also clear is to apply Martin and supply by the very terms that it uses, that is, the resolution that we're talking about the judge making is moored to something. It's moored to the elements of the crime. We're talking about somebody being twice tried for the same offense. How do we define offense in the law? In other double jeopardy cases, this Court has taken an elements approach. Two offenses are different. If one requires proof of an element, the other does not. We look to the elements. And right to jury trial, this Court has been very active very recently in determining how is it that we determine when someone has a right to a jury trial on some fact before punishment can be imposed. We look to what are the elements that have to be proven beyond a reasonable doubt. If a fact is necessary to — to — in order for punishment to be imposed, if that has to be proven, then it is a matter for jury trial and has to be proven beyond a reasonable doubt. So when this Court said one or more of the factual elements of the offense in Martin and supply, I took it to mean, and I have always taken it to mean, one or more of the facts that have to be proven, we can identify what those are. We have to identify them in every case. This is not a strange process. You have to instruct on them, determine what they are, and use those. Alito, if the judge simply misinterprets one of the elements, doesn't add a new element, you say that there would be double jeopardy there, right? Yes. Isn't that going to be a very difficult line to draw? It can be a very difficult line to draw, but all tests can sometimes involve difficult lines to draw. We used to have a no-evidence test for whether evidence was sufficient, and we — that was changed in Jackson v. Virginia to whether a reasonable juror could find guilt beyond a reasonable doubt, and you will find a great many dissents in cases between appellate judges on whether or not this case itself involved sufficient proof for a jury to find guilt beyond a reasonable doubt. The test is not always easily applicable, neither was the no-evidence test. So it might have been — Alito, for example, suppose this statute makes it a crime to burn down a dwelling, and the judge interprets dwelling to mean a building that is currently lived in and therefore not including a vacation home. And let's assume that's an incorrect interpretation. Now, is that an incorrect interpretation, or is that the addition of a new element to the statute, namely that it is a building in which people — that's one element and the other is people are currently living there? I would define — I would draw the line at any time the Court requires the prosecution to prove a fact that under the law passed by the legislature, the prosecution never has to prove in order to make out the case. Well, that's every misinterpretation. I mean, I don't know why this case doesn't involve simply a misinterpretation of what the elements of the crime are. I mean, any misinterpretation you can — which goes beyond the minimum that the statute requires can be recharacterized as adding an additional element. It does involve a mischaracterization of what the elements were, but not of an element. The judge didn't hear say you can't prove that this is a building unless it was a dwelling. You can't prove it was real property unless it was a dwelling. The judge said you can prove those things and it's not enough. You also have to prove that it was a non-dwelling in this case. But in several of our cases, what the Court has done wrong is to make the prosecution prove additional facts in order to prove an element. So the distinction that you are drawing is one between incorrectly making the prosecution prove additional facts and incorrectly saying that the prosecution has to show an additional element. And I guess I just don't understand that distinction. I would suggest that this is an opportunity for this Court to draw the line at does the judge require, has the judge required the prosecution to prove something the statute doesn't require to be proven, it's not one of the factual elements of the offense, or has the judge, the error the judge can make under Martin-Linden Supply, has the judge simply misassessed the evidence? The judge has looked at it and said, you know, I understand all your proofs, I'm just wondering how you would have assessed Rumsey, Smallis, and Smith would all have come out differently. No, I don't think so. Rumsey is a difficult case, but Rumsey is a verdict case. Rumsey is not a directed verdict case. The judge in Rumsey was the fact finder. Rumsey is your bench trial. It's complicated because it was a sentencing case, a death penalty sentencing case, that this Court treats the hearing the same as the trial for double jeopardy  jury. The judge, you're saying that your, your approach doesn't solve the bench trial problem any more than your friend's approach, right? A verdict is a verdict. I agree with Mr. Moran. When the judge on the merits returns a verdict, what the judge does or the jury does in returning a verdict on the merits is very different than what the judge does on a judgment of acquittal. The jury weighs credibility and assesses the weight of evidence, and the judge is prohibited from doing those things, is supposed to be by the law, in making his decision. His is a ruling of law as gatekeeper that we won't even reach this decision. The jury is expressing its opinion based on the evidence, and although it can be proven that they've reached a result contrary to reality, they can't be right or wrong legally. Their opinion is their opinion of those 12 collective people. After doing something, the judge isn't allowed to do. So the directed verdict isn't, I don't think, a perfect analog to the jury trial. But the bench trial issue gets very complicated because it is possible to do something with a bench trial that we don't do with jury trials, and that's have specific fact-finding as to the elements, many jurisdictions do. There is, in fact, a case, the Lentz case that Mr. Moran cited, where on rehearing en banc, the Court split evenly as to whether or not the judge's verdict, where the judge had actually specifically found all of the elements. Crime is elements A, B, and C, I find them. Yet, I don't find element D, so I acquit. The Court split 5 to 5 on rehearing en banc and whether or not that judge had really announced two verdicts, and it could be reformed to a conviction, and Justice Sotomayor was one of the members of the five, who would have addressed the question of is that not different. The form of the language doesn't control, has not the judge actually entered a guilty verdict in that circumstance. That's a very, you know, kind of off-the-beaten-track kind of a situation. In a jury trial where a judge simply takes the case from the jury on the motion of the defendant and resolves the fact that the legislature has not said that one needs to be proven to impose punishment under the law, then he's done something very different than what the jury's done. And to reverse that and allow the prosecution to have one full and fair opportunity, we believe, imposes no cruelty or oppression upon the defendant. Thank you very much. Roberts. Thank you, counsel. Mr. Gannon. Mr. Chief Justice, and may it please the Court. We believe the Court can resolve this case by distinguishing between the misconstruction of an element and the erroneous addition of an element to the case. But if the Court's unwilling to draw that particular distinction, it could also resolve the case by allowing the government to appeal in both of those instances. This goes to the question that Justice Kagan was asking near the end of my friend's argument. We don't think that that would require overruling any of the Court's cases. We think it would require narrowing Smallis and Rumsey to their facts, and — but Smith would not be a problem in that context. Rumsey is distinct for the reason that my friend suggested. It was actually a case involving fact findings by the judge. The Court characterized it as a special verdict made by the sole decisionmaker there. It was not an instance like this where the judge had taken the case away as a matter of law from the jury because there wouldn't be any sufficient evidence. It's been cited later on in these cases, in particular in Smallis, as being about something like a sufficiency decision. But on its facts, that's not what it was. Smith is about a completely separate question because there's no dispute there about the appropriate construction of the element, the firearms offense. There, the element in question was whether the barrel length was less than 13 inches. There was a question about whether certain evidence that the firearm in question was a pistol was sufficient to satisfy that burden, but there was no doubt about what the element was. It was 13 inches or less. And so it wasn't about misconstruing the element. Smallis is probably the hardest case in this context, but if you look at what actually happened in Smallis and what was at issue in the demer there, the decision that the court made there was one that was principally about whether there was sufficient evidence of causation, which was an undisputed element of each of the counts at issue there, and only in footnote 7 of the Court's opinion did it address a potential misconstruction of the element, and it was a different element. This was what my friend Mr. Moran mentioned. Breyer, I'll go through this. My basic question, normally a judge will wait until the jury comes in and then decide if the jury convicts him whether to set it aside, so there's no problem. So now we have a judge, for some reason or other, this judge has decided to grant the motion of acquittal in the middle of the case. Now, this is unusual, I think, I hope. And if so, though, the judge might not think of writing down his reasons. So he might just say there isn't enough evidence. And now it happens that just before he did that, the defense lawyer argued to him an erroneous theory. All right. An added element or something or other, some kind of misconstruction of this. What happens then? Well, I think that we normally expect judges to give reasons for their decision. Yeah, but this is a judge, after all, who for some reason, we don't know what, decided instead of waiting, as they normally would do, granted in the middle of the case. Well, in the State of Michigan, the rule does not permit the judge to reserve the ruling on this motion. Oh, I see. So there are a lot more places that they do. Actually, in the vast majority of States, that's the rule. The Federal rule was only changed in 1994 to allow this type of decision. And then this has arisen a lot more than I think. All right, fine, thank you. And in that case, they have to write it down? Well, I think that the rule in Michigan and in the Federal Rule 29 does require the judge to make a determination to satisfy that there is an acquittal, which would mean that there is no sufficient evidence to support an acquittal. But many States have a different rule. Many States permit the judge to reserve it until after the jury verdict. My understanding is that most States do not permit that. The Federal Government only started permitting that in 1994. And even the last time the Justice Department studied this, about 10 years ago, it concluded that notwithstanding the 1994 rule amendment and the Federal rules, which came with advisory committee notes strongly encouraging judges to reserve these sorts of decisions precisely to preserve the public's interest in an acquittal change. So then, in other words, when an acquittal, notwithstanding that, what? Notwithstanding that, in approximately 70 percent of the cases in which there are Rule 29 verdicts, they are done mid-trial, even in the Federal system, at least in the early 2000s is the only data collection that I'm aware of. And so this still is a problem. I think that if it looks like the decision is based on classic insufficiency evidence and there is no argument about whether it's based on a misconstruction or an erroneous addition of the element, then we would have to be — we would lose, unless the Court's willing to overturn the broader line of cases in Martin, Linnitz, and Abrea, Scott, and the other cases before me. Breyer, did I just — your idea of what the empirical situation is in the last 30, 40 years? Have most U.S. prosecutors or prosecutors in these States thought that they could appeal an acquittal in the middle of the trial on the ground that the judge made a mistake of law? I don't think that they have mostly thought that. The Federal Government certainly has maintained that that is appropriate in — we think that in the Maker decision in the Third Circuit in 1984 recognized this. We do think that there is — my friend, Mr. Moran, asks the Court to conclude that any decision like this that's predicated upon a supposed erroneous addition of an element could easily be recharacterized as a misconstruction of another element. And I think that, well, at some formal level that might be theoretically true. In an egregious case like this, there is a distinction, which is that if this were an element of the offense that needed to be charged in the indictment, at least in the Federal system, then the failure to have alleged that the structure here was a non-dwelling would have made the indictment invalid, and the defendant would have been able to make exactly the same legal argument he made to the judge here, which is to say that the prosecution has failed to prove, has failed even to allege, one of the necessary elements of the offense, which is that this structure is not a dwelling. We know that that particular — Ginsburg. If we adopt your rule, it can't be for this case only, and I think that the characterization of a non-existent element or a court misconstruction of an element, I think in many cases you could do — call it one or call the other. So that's a difficult line to adopt. Well, I don't think it's difficult in the sense that most of the cases that we're talking about don't involve this type of error. The cases that this Court has decided, Rumsey, Smalis, and Smith, even Petitioner doesn't characterize as cases involving additional elements. And this Court has recognized in Lee that when the error is one that kept the indictment from being valid because it failed to charge a relevant element, and the judge did not rule on that until after jeopardy had attached, the government was still entitled to appeal that decision. And if it were erroneous, the government's only going to get a chance at retrial if the judge's decision was legally erroneous, then therefore it demonstrates that there was no so-called acquittal on the offense chart. Sotomayor, you gave us earlier the statistics of how many judges grant Rule 29 motions midtrial. I think you said 76 percent. What's the gross number relative to the number of actual verdict decisions by juries or the judge himself? The only data that I've seen about this is data that the Justice Department collected about 10 years ago. It was from the early 2000s. And the conclusion there was that there were approximately 73 pretrial Rule 29 dismissals per year, which actually is a larger number than you might at first think because that represents about 10 percent of the number of cases that were actually resolved by jury verdicts. And so it is not uncommon. I mean, this particular type of error that we have in this case we think is the most egregious kind of error. It's one that demonstrates that the Court is engaging in — it's usurping the province of the legislature in redefining the scope of the offense. And we think under the terms of the Double Jeopardy Clause itself, which talks about whether there's been — somebody's been subject to being twice in jeopardy for the same offense, then it matters what the offense was.  And so extensively that the indictment literally would have been invalid and could have been dismissed as not adequately alleging the elements of the offense. And we know that that's something that the government would have been able to appeal. We also know that the government would be able to appeal if the judge had reserved decision until after the jury had returned a jury — a guilty verdict. We acknowledge, as the State does, that jury verdicts are different. If a jury is misinstructed and a jury returns an acquittal, that we are not quarreling with that in any way. We don't think that there's any purchase in the Court's case law to do that. And I think one of the reasons is because the jury verdict might be attributable not just to mistake or error, but also to lenity or compromise. There are lots of reasons why we don't exactly know why a jury did what it did and why juries generally enter general verdicts. And that makes it different from what we have here. We have here an instance where the Court, as a matter of law, at the defendant's behest, took the case away from the jury. We think the fact that the defendant chose— Scalia, is that important, at defendant's behest? We do think that that's important by analogy to the Court's mistrial cases in the double jeopardy context. So you're arguing that this should only be — this rule should only be applied when the defendant asks for it? Or if the defendant consents to it, as is the case in the mistrial cases in the double jeopardy context. Thank you, counsel. Mr. Moran, you have 5 minutes. Thank you, Mr. Chief Justice. Responding to Mr. Gannon's argument first, I do characterize Rumsey as an additional element case, and I also characterize it as a misconstrued element case. It's a perfect example of how these cases can be construed either way. The judge required a contract. You can call that an additional element to the aggravating circumstance, or you can call it as a misconstruction of what pecuniary gain means in the first place. The same here. The error here can be construed as a misconstruction of the element that the property burned has to be a building, and the judge says, looking at the statute, I construed it to be a particular type of building, or it can be, as the prosecution construed it, as the addition of an element. There is no difference between the two characterizations. Turning to the broader question about this whole line of cases, and should this Court go back and revisit this whole line of cases, is there really a problem here? We have no amicus briefs from any States indicating that there is a problem. We have only the amicus from the United States saying that there is a problem. Is there a problem here that justifies going back and revisiting 50 years or possibly 108 years, all the way back to Kepner, all of this case law? We submit not, especially since, as this Court noted just 6 years ago in Smith, there is an easy solution if there really is a problem. If there really is a problem with judges going wild and granting directed verdicts midtrial for no apparent reason, all that has to be done is the States can follow Nevada's lead and say judges can't do that. Or judges as an intermediate or States as an intermediate step could at least give judges the power to reserve that. Kennedy, have any States done that? I'm somewhat concerned about telling a judge that if the judge's best judgment is there is insufficient evidence that the defendant has to proceed with the trial. I would be, too, Justice Kennedy. I think it would be a mistake. I'm not aware of any States since this decision, since this Court's decision in Smith that have followed Nevada's lead. There are good reasons to give judges disacquittal power, namely preserve the States' resources, preserve the jury's time, and prevent the defendant from having to go through a trial that is going nowhere. And so there are good reasons why States don't do this. The States have apparently made the decision, even after being alerted in Smith that there is something they can do about it, that the good of giving judges this midtrial directed verdict, acquittal power, outweighs the bad. Finally, I would just like to respond to Mr. Boffman's point, and it was also raised by Mr. Gannon, about how jury verdicts are different. There is something special about jury verdicts because we don't always know why they granted the verdict. But we have the same problem with judicial directed verdicts. And we have Martin Lennon, where the judge just says this is the weakest case I have ever seen. We have Smalas, where he just says it's legally insufficient. If the Court adopts the line that the prosecution and the Solicitor General would have you adopt, you are going to have to require judges to give very specific findings as to what the elements of the offense are and which ones they don't find. And that itself would require a radical reworking of this Court's jurisprudence. If there are no further questions. Thank you. Thank you, counsel. The case is submitted.